**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADVANCED MEDIA NETWORKS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC. AND CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS,<br><br>Defendant. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Advanced Media Networks, LLC files this Complaint for patent infringement against Defendants Verizon Communications Inc. and Cellco Partnership d/b/a Verizon Wireless, and alleges as follows:

**PARTIES**

1. Plaintiff Advanced Media Networks, LLC ("Advanced Media") is a California limited liability company having a place of business at 5900 Wilshire Boulevard, Suite 2600, Los Angeles, CA, 90036.

2. Advanced Media (formerly NeTune Communications Inc.) is in the business of designing and building advanced visual communications systems, integrated collaborative systems, and converged networks and systems. It was formed in the mid-1990's by the inventor Curtis Clark and others for the express purpose of developing mobile systems that would enable the streaming of video and other data from remote locations. Advanced Media's development efforts are reflected in the eleven (11) US and European patents, including the patent-in-suit, that it owns and practices today. Advanced Media has worked closely with Hollywood Studios providing mobile WiFi networks on location for productions such as the Harry Potter series of

motion pictures, Blackhawk Down, Spiderman, and numerous other motion picture and television productions, and continues to offer these services to the motion picture and other industries. Advanced Media has licensed the patent-in-suit to multiple mobile wireless network equipment and service providers for which Advanced Media is currently a global certified reseller of such equipment and services.

3. Verizon Communications Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business at 140 West Street, New York, New York 10007. Verizon Communications has a registered agent for service, the Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

4. Cellco Partnership does business as Verizon Wireless, and is wholly owned by Verizon Communications Inc. Verizon Wireless has a principal place of business at 500 W. Dove Road, Southlake, Texas 76092. Verizon Wireless has a registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Verizon Communications Inc. and Verizon Wireless are collectively referred to herein as "Verizon" or "Defendant."

## JURISDICTION AND VENUE

5. This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et* seq. This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. On information and belief, Verizon makes, imports, uses, sells, and/or offers for sale the Accused Instrumentalities and Services (as defined below) within the United States, including this District, that infringe one or more claims of United States Patent No. 5,960,074 entitled "MOBILE TELE-COMPUTER NETWORK FOR MOTION PICTURE, TELEVISION

AND TV ADVERSTISING PRODUCTION " (the "`074 Patent" or "Asserted Patent"). The `074 Patent was duly and legally issued by the United States Patent and Trademark Office on September 28, 1999. A true and correct copy of the `074 Patent is attached hereto as Exhibit 1.

7. On May 11, 2010, a request for reexamination was filed. On November 22, 2011, a reexamination certificate was issued that, among other things, confirmed the patentability of Claims 1, 10-14, 21-28, and 37-38. Other claims were confirmed as amended, and new claims were added. A true and correct copy of the reexamination certificate is shown in Exhibit 1.

8. On November 29, 2012 and February 6, 2013, two additional reexamination requests were filed. These requests were merged. On April 23, 2014, a reexamination certificate was issued that, among other things, confirmed the patentability of Claims 1-23, 28-37, 41-42, 44-63, 67-70, 72-73, 75-76, 91-99, 101-107, 123-124, and 126. The patentability of other claims was confirmed as amended, and new claims were added. A true and correct copy of the reexamination certificate is shown in Exhibit 1.

9. Verizon operates a nationwide digital wireless telecommunications system, and in particular, operates the system to offer wireless services, including wireless broadband services, to subscribers. "Verizon Wireless is the largest wireless service provider in the United States as measured by retail connections and revenue." Exhibit 2, Form 10-K for Verizon Communications Inc. dated December 31, 2013, p. 1. As of December 31, 2013, Verizon served approximately 305 million people in more than 500 markets. *Id.* Hence, Verizon markets and sells its wireless services throughout the United States, including within this District.

10. On information and belief, Verizon directly and/or indirectly imports, manufactures, uses, offers for sale, and/or sells the Accused Instrumentalities and Services (as

defined below) within the United States, including this District, that infringe one or more claims of the `074 Patent.

11. Venue is proper in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

## GENERAL ALLEGATIONS

12. Advanced Media is the owner by assignment of the Asserted Patent, and is entitled to sue for past and future infringement thereof.

### Verizon's Accused Wireless Telecommunications Network

13. Verizon is engaged in the business of selling digital wireless services to subscribers. Verizon operates a vast wireless telecommunications network over which subscribers are able to communicate voice data as well as other data using broadband services. Verizon's network consists of a large multitude of cells that communicate with mobile devices via microwaves. The cells typically provide redundant overlapping coverage for a given area such that a subscriber moving with a Verizon device from one area to the next may seamlessly be handed-off from one cell to the next without dropping service. *See, e.g.*, Newton's Telecom Dictionary, 16th Edition, p. 165 (16th Ed. 2000) (attached hereto as Exhibit 3) (under the definition of "Cell Switching"). Hence, Verizon's "vast wireless telecommunications network" (the "Accused System") constitutes a "redundant microwave communication system" as this phrase is used in claims of the `074 Patent.

### Verizon's Accused Consumer Devices

14. A subscriber to Verizon's services over the Accused System typically buys or leases a digital communications device such as a smart phone, tablet computer ("tablet"), or router, gateway, or other mobile device containing a WLAN network access point (i.e. "hotspot").

**Verizon's Accused Smart Phones**

15. Examples of smart phones currently imported, offered for sale, and/or sold by Verizon are the Apple iPhone 4s, Apple iPhone 5, Apple iPhone 5c, Apple iPhone 5s, Apple iPhone 6, Apple iPhone 6 Plus, BlackBerry Bold 9930, BlackBerry Q10, BlackBerry Z10, HTC One (M8), HTC One remix, HTC Windows Phone 8X, Kyocera Brigadier, LG Enact, LG G2, LG G3, LG Lucid 3, LG G Vista, Motorola Droid Maxx, Motorola Droid Mini, Motorola Droid Razr M, Motorola Moto X, Nokia Lumia 928, Nokia Lumia Icon, Samsung ATIV SE, Samsung Galaxy Note 3, Samsung Galaxy Note 4, Galaxy S III, Samsung Galaxy S 4, Samsung Galaxy S 5, and all past, present and future cellular phones that offer connectivity to other devices to the Verizon network over a local area network provided by the device (these and all similar cellular phones referred to herein as the "Accused Phones"). Each of these Accused Phones may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the Verizon telecommunications system, and a "wireless LAN [local area network] using an Ethernet packet switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as these terms are used in the claims, *e.g.,* Claims 1, 3, and 128, of the `074 Patent). Whether or not a subscriber may utilize the mobile hotspot or tethering feature of an Accused Phone is controlled by Verizon.

16. For example, the Apple iPhone 6 provides a local area network to which another device may connect the iPhone acting as a wireless hub to provide connectivity to the Verizon telecommunications network when the "Personal Hotspot" is enabled. *See* iPhone User Guide For iOS 8 Software (attached hereto as Exhibit 4), pp. 39 – 40 (under "Personal Hotspot":"Use Personal Hotspot to share your iPhone Internet connection. Computers can share your Internet

connection using Wi-Fi….”). The manual for the Apple iPhone 6 notes “[The Personal Hotspot] feature may not be available with all carriers. Additional fees may apply. Contact your carrier for more information.” *Id.* at p. 39. Hence, Verizon controls whether or not a user may utilize the Apple iPhone 6 as a mobile hotspot.

17. As another example, the BlackBerry Q10 provides a local area network to which another device may connect through the BlackBerry Q10 acting as a wireless hub to provide connectivity to the Verizon telecommunications network when the “Mobile Hotspot” mode is enabled. *See* BlackBerry Q10 Smartphone User Guide (attached hereto as Exhibit 5), p. 134 – 135 (under heading “Mobile Hotspot”, “Sharing your Internet connection using Mobile Hotspot mode.”). As noted in the manual for the BlackBerry Q10, the Mobile Hotspot feature “uses the mobile network.” *Id.* at p. 134. Hence, Verizon controls whether or not a user may utilize the BlackBerry Q10 as a mobile hotspot.

18. As another example, the HTC One (M8) phone provides a local area network to which another device may connect through the HTC One (M8) acting as a wireless hub to provide connectivity to the Verizon telecommunications network when the “Mobile Hotspot” is enabled. *See* HTC One (M8) User Guide (attached hereto as Exhibit 6), p. 286 (under “Using HTC One as Mobile Hotspot.”). As noted in the manual for the HTC One (M8), “Mobile Hotspot is included with Share Everything plans. If you don’t have a Share Everything plan and want to add Mobile Hotspot subscription, contact Verizon Wireless for details.” *Id.* Hence, Verizon controls whether or not a user may utilize the HTC One (M8) as a mobile hotspot.

19. As another example, the LG G2 phone provides a local area network to which another device may connect through the LG G2 acting as a wireless hub to provide connectivity to the Verizon telecommunications network when the “Mobile Hotspot” is enabled. *See* LG G2

User Guide (attached hereto as Exhibit 7), pp. 171 – 172 (under "Tethering & networks," under the subheading "Mobile Hotspot"). As noted in the manual for the LG G2, the Mobile Hotspot feature uses the phone's mobile data connection. *Id.* at 172 ("Mobile Hotspot: Allows you to use your device as a Mobile Hotspot for other devices to use your mobile network connection."). Hence, Verizon controls whether or not a user may utilize the LG G2 as a mobile hotpot.

20. As another example, the Motorola Moto X provides a local area network to which another device may connect through the Motorola Moto X acting as a wireless hub to provide connectivity to the Verizon telecommunications network when the "Wi-Fi hotspot" mode is enabled. *See* Moto X User's Guide (attached hereto as Exhibit 8), pp. 53-54 ("Wi-Fi hotspot": "You can make your smartphone a Wi-Fi hotspot to provide portable, convenient internet access to other Wi-Fi enabled devices."). As the "Wi-Fi hotspot" feature uses the phone's mobile data connection, Verizon controls whether or not a user may utilize the Motorola Moto X as a mobile hotspot.

21. As another example, the Nokia Lumia 928 provides a local area network to which another device may connect through the Nokia Lumia 928 acting as a wireless hub to provide connectivity to the Verizon telecommunications network when the "Internet Sharing" mode is enabled. *See* Nokia Lumia 928 User Guide (attached hereto as Exhibit 9), pp. 41 – 42 (under "Share your mobile data connection", "You can make your phone the hotspot for your laptop or other devices."). As noted in the Nokia Lumia 928 manual, devices connected to the Nokia Lumia 928 through the "Internet Sharing" feature use the phone's mobile data connection. Id. at p. 42 ("The other device uses data from your data plan, which may result in data traffic costs. For information on availability and costs, contact your network service provider."). Hence, Verizon controls whether or not a user may utilize the Nokia Lumia 928 as a mobile hotspot.

22. As another example, the Samsung Galaxy S 5 phone provides a local area network to which another device may connect through the Samsung Galaxy S 5 acting as a wireless hub to provide connectivity to the Verizon telecommunications network when the "Mobile Hotspot" feature is enabled. *See* Samsung Galaxy S 5 User Guide (attached hereto as Exhibit 10), p. 91 (under "Mobile Hotspot": "This feature allows you to turn your device into a Wi-Fi hotspot.", "You can use Mobile Hotspot to share your phone's Internet connection with multiple devices."). As noted in the manual for the Samsung Galaxy S 5, "Mobile Hotspot requires a subscription to Mobile Hotspot/Mobile Broadband Connect service. Contact Verizon Wireless for more information." *Id.* at p. 91. Hence, Verizon controls whether or not a user may utilize the Samsung Galaxy S 5 as a mobile hotspot.

**Verizon's Accused Tablets**

23. In addition to the Accused Phones, Verizon also offers for sale and sells the following tablet devices that have the capability to connect to the Verizon broadband wireless network as well as providing a local area network (LAN) over which other devices may connect to the Verizon wireless network: Apple iPad Air, Apple iPad Mini, Apple iPad Mini with Retina display, Apple iPad with Retina display, Google Nexus 7, Samsung Galaxy Tab 4, and all past, present and future tablets that offer connectivity to other devices to the Verizon network over a local area network provided by the device (these and all similar mobile tablets referred to herein as the "Accused Tablets"). Each of these Accused Tablets may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the Verizon telecommunications system, and a "wireless LAN [local area network] using an Ethernet packet

switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as terms are used in the claims, *e.g.* Claims 1, 3, and 128, of the `074 Patent).

**Verizon's Accused Mobile Access Points**

24. In addition to the Accused Phones and Accused Tablets, Verizon also offers for sale and sells the base stations, including but not limited to the Verizon Ellipsis Jetpack (*see* Exhibit 11), the Verizon Jetpack 4G LTE Mobile Hotspot MiFi 5510L (*see* Exhibit 12), and the Verizon Jetpack 4G LTE Mobile Hotspot MHS291L (*see* Exhibit 13), each of which connects to the Verizon wireless network and provides a mobile local area network (LAN) through which other devices may connect to the Verizon network. All past, present and future mobile stations that offer connectivity to other devices to the Verizon network over a local area network provided by the device are referred to herein as the "Accused Mobile Access Points." The Accused Phones, Accused Tablets, and Accused Mobile Access Points are collectively referred to herein as the "Accused Devices." Each of these Accused Mobile Access Points may be configured to constitute a "mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system", *i.e.,* the Verizon telecommunications system, and a "wireless LAN [local area network] using an Ethernet packet switching protocol," "the TCP/IP protocol," and/or "an Internet protocol" (as these terms are used in the claims, *e.g.,* Claims 1, 3, and 128, of the `074 Patent).

**Verizon Controls Access to its Telecommunications System**

25. A subscriber who purchases one of the Accused Devices must subscribe to a Verizon data plan to use the device to connect to the internet over Verizon's wireless network. In order for an Accused Device to be connected to Verizon's wireless system, the device must have a SIM card provided by Verizon that contains information that is associated with a subscriber's

account and which enables the Accused Device to be used on Verizon's wireless network. Each Accused Device is enabled or activated by Verizon through information stored on a SIM card. In fact, a SIM card can be purchased by or reprogrammed for a subscriber to enable a device not purchased through Verizon to be used on Verizon's wireless network (any such phone, tablet or other device utilizing a Verizon SIM card and providing a LAN for tethering or otherwise connecting other devices, is also included within the definition of "Accused Devices"). The SIM card is the key by which Verizon controls which devices may connect to the Verizon wireless network. Without Verizon's SIM card, the Accused Device is useless for its intended purpose of facilitating wireless communications over a wireless network, although certain features such as a calculator or camera application may still be used. The code, data, and/or other information stored on the SIM card facilitate Verizon's control over which devices may be connected to the Verizon wireless communications network. The SIM card identifies the subscriber to Verizon's network and facilitates Verizon in billing the user for the services that the subscriber uses. In addition, in the event the subscriber's service or subscription is terminated, Verizon may de-activate the device via the code, data, and/or other information stored on the SIM card so that the device cannot connect to the Verizon telecommunications network.

26. At least as to the Accused Phones and the Accused Tablets, historically, the data plan, without additional fees, only allowed the device itself to connect to the Verizon wireless network. In order to connect other devices through the LAN provided by one of the Accused Phones or the Accused Tablets, historically, a subscriber paid an additional fee or subscribed to a more expensive and a higher capacity data plan for the ability to "tether" additional devices through the Accused Phone or Accused Tablet over the LAN provided by same. *See, e.g.*, HTC One (M8) User Guide (Exhibit 6), p. 286 ("Mobile Hotspot is included with Share Everything

plans. If you don't have a Share Everything plan and want to add Mobile Hotspot subscription, contact Verizon Wireless for details."). Verizon typically charged twenty dollars ($20.00) a month for this additional "tethering" capability. *See, e.g.* Exhibit 14, Article Regarding FCC Fine of Verizon for Blocking Tethering Applications, p. 1. More recently, while Verizon continues to offer plans with an extra monthly charge for tethering and/or mobile hotspot services, tethering and/or mobile hotspot services appear to be included in some Verizon data plans. *See, e.g.*, Exhibit 15 ("Personal Hotspot: Your smartphone can get Wi-Fi enabled devices online, at no extra cost."). Even when an additional fee is not charged by Verizon for tethering and/or mobile hotspot service, the use of tethering and/or mobile hotspot service results in a higher amount of data downloaded by a subscriber which, in turn, results in higher fees to Verizon. Telecommunications services offered for sale and sold by Verizon in connection with the Accused Devices, including but not limited to the "tethering" services, the "mobile hotspot" service and the services sold in connection with data plans associated with the Accused Mobile Access Points, are referred to herein as the "Accused Services."

27. The Verizon Accused System and the Accused Devices are collectively referred to herein as the "Accused Instrumentalities." The Accused Instrumentalities and the Accused Services are collectively referred to herein as the "Accused Instrumentalities and Services."

## Verizon's Infringing Acts

28. Verizon has directly infringed and continues to directly infringe one or more claims of the `074 Patent by making, having made, importing, using, offering for sale, and/or selling the Accused Instrumentalities and Services.

29. For example, but not as a limitation, Verizon's direct infringement of Claims 1, 3, and 128 of the `074 Patent is shown in each of the claim charts of Exhibits 16-26.

30. Verizon's nationwide wireless telecommunications network is a redundant microwave communications system.

31. Each of the Accused Instrumentalities is capable of providing a wireless local area network.

32. Each of the Accused Instrumentalities is capable of providing a mobile Wi-Fi Hotspot.

33. Each of the Accused Instrumentalities is capable of acting as a mobile hub station.

34. Each of the Accused Instrumentalities is capable of transferring information between Verizon's microwave communication system and a wireless LAN using an ethernet packet switching protocol.

35. Each of the Accused Instrumentalities is capable of transferring information between Verizon's microwave communication system and a wireless LAN using the TCP/IP protocol.

36. Each of the Accused Instrumentalities is capable of transferring information between Verizon's microwave communication system and a wireless LAN using an Internet protocol.

37. Therefore, by way of example, but not as a limitation, Verizon has and continues to directly infringe Claims 1, 3, and 128 of the `074 Patent. In addition, Verizon has and continues to infringe other Claims of the `074 Patent.

38. Furthermore, Verizon has engaged in indirect infringement since at least as early as November 6, 2012, the date it received actual notice (as set forth below), and continues to indirectly infringe one or more claims of the `074 Patent by providing its customers with the

infringing Accused Instrumentalities and Services in order to enable those customers to use the Verizon Accused System in connection with one or more of the Accused Devices, in a manner covered by one or more of the claims of the Asserted Patent. Verizon has and continues to actively promote tethering and/or mobile hotspot functionality to its subscribers knowing that the subscriber's utilization of such tethering or mobile hotspot functionality on one or more of the Accused Devices constitutes infringement of one or more claims of the Asserted Patent. Each subscriber that has tethering or mobile hotspot capability as part of his or her (or in the case of an entity, its) Verizon data plan or that pays an extra fee for tethering or mobile hotspot service in connection with an Accused Device directly infringes one or more claims of the Asserted Patent by his or her (or in the case of an entity, its) use of the Accused Instrumentalities in connection with tethering or mobile hotspot service.

**Verizon Received Actual Notice**

39. On or about November 6, 2012, Advanced Media sent a letter to Verizon, which letter was actually received by Verizon, a true and correct copy of which is attached hereto as Exhibit 27 (the "Letter"). By the Letter, Advanced Media notified Verizon that its smartphones and Mobile Access Point devices infringed the '074 Patent. Furthermore, the Letter provided Verizon notice that Advanced Media was in litigation with Gogo, Inc., which litigation was subsequently resolved in July, 2013, by a licensing agreement. A copy of the '074 Patent and its prosecution history were provided to Verizon with the Letter.

40. Verizon responded to the Letter on or about January 29, 2013 (the "Response"). *See* Exhibit 28.

41. In spite of such actual knowledge of the '074 Patent, Verizon continued and continues to infringe one or more claims of the '074 Patent.

**FIRST CLAIM FOR RELIEF**
**(Infringement of the `074 Patent)**

42. Advanced Media incorporates paragraphs 1 through 41 as though fully set forth herein.

43. Upon information and belief, Defendant Verizon has been and is now directly and/or indirectly infringing one or more claims of the `074 Patent by (1) making, importing, using, offering for sale, and/or selling the patented inventions, (2) by actively inducing others to use the patented inventions, and/or (3) by contributing to the use of the patented inventions in the United States.

44. More particularly, without limitation, Verizon has been, and is now, directly infringing one or more claims of the `074 Patent by making, importing, using (including use for testing purposes), offering for sale, and/or selling the Accused Instrumentalities and Services, all in violation of 35 U.S.C. § 271(a).

45. In addition and/or in the alternative, Verizon has been, and is now, indirectly infringing one or more claims of the `074 Patent by (1) inducing customers to use the Accused Instrumentalities and Services to directly infringe one or more claims of the `074 Patent in violation of 35 U.S.C. § 271(b), and/or by (2) contributing to customers' direct infringement of one or more claims of the `074 Patent by their use of the Accused Instrumentalities and Services in violation of 35 U.S.C. § 271(c).

46. More particularly, Verizon has engaged in indirect infringement by its conduct since at least as early as November 6, 2012, in providing its subscribers with infringing Accused Instrumentalities in order to enable those customers to use the Accused Instrumentalities and Services in a way that directly infringes one or more claims of the Asserted Patent. On information and belief, Verizon has intended, and continues to intend, to induce patent

infringement by its customers, and has had knowledge of the `074 Patent and knowledge that the induced acts would constitute infringement or has been willfully blind to the possibility that the induced acts would constitute infringement. Alternatively, on information and belief, Verizon has made, imported, used, sold and/or offered for sale one or more of the Accused Instrumentalities and Services with knowledge of the `074 Patent and the intent that such Accused Instrumentalities and Services be used in connection with an infringing system, with either the knowledge that such system would infringe, or, in the alternative, being willfully blind that such system would infringe.

47. Advanced Media has been damaged by the infringing activities of Verizon, and will be irreparably harmed unless those infringing activities are preliminarily and permanently enjoined by this Court. Advanced Media does not have an adequate remedy at law.

48. Verizon was given actual notice of the existence of the `074 Patent. Despite such notice, Verizon has continued in willful acts of infringement without regard to the `074 Patent, and will likely continue to do so unless otherwise enjoined by this Court.

## **REQUEST FOR RELIEF**

WHEREFORE, Advanced Media requests the following relief:

(a) A judgment in favor of Advanced Media that Verizon has directly infringed and/or has indirectly infringed by way of inducement and/or contributory infringement one or more claims of the Asserted Patents;

(b) A judgment that Advanced Media has been irreparably harmed by the infringing activities of Verizon, and is likely to continue to be irreparably harmed by Verizon's continued infringement;

(c) Preliminary and permanent injunctions prohibiting Verizon and its officers, agents, servants, employees and those persons in active concert or participation with any of them, as well as all successors or assignees of the interests or assets related to the Accused Instrumentalities, from further infringement, direct and indirect, of the Asserted Patents;

(d) A judgment and order requiring Verizon to pay Advanced Media damages adequate to compensate for infringement under 35 U.S.C. § 284, which damages may include lost profits but in no event shall be less than a reasonable royalty for its usage of the inventions of the Asserted Patents, including pre- and post-judgment interest and costs, including expenses and disbursements;

(e) A judgment for treble damages for willful infringement as provided by 35 U.S.C. § 284;

(f) A judgment declaring this an exceptional case and awarding Advanced Media its attorneys' fees as provided by 35 U.S.C. § 285;

(g) A judgment awarding Advanced Media its costs as provided under Fed. R. Civ. P. 54(d)(1);

(h) A judgment for pre- and post-judgment interest on all damages awarded;

(i) A judgment awarding Advanced Media post-judgment royalties; and

(j) Any and all such further necessary or proper relief as this Court may deem just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Advanced Media hereby demands a trial by jury of all issues so triable.

**FOX ROTHSCHILD LLP**

/s/ Gregory B. Williams
Gregory B. Williams (I.D. #4195)
Citizens Bank Center
919 N. Market Street, Suite 300
Wilmington, DE 19899-2323
(302) 622-4211
(302) 656-8920 (fax)
gwilliams@foxrothschild.com

*Attorneys for Plaintiff*
*Advanced Media Networks, LLC*

Of Counsel:

**Buether Joe & Carpenter, LLC**
Brian A. Carpenter
Eric W. Buether
Christopher M. Joe
Mark D. Perantie
Niky Bukovcan
1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone: (214) 446-1273
Facsimile: (214) 635-1829
*Eric.Buether@BJCIPlaw.com*
*Brian.Carpenter@BJCIPlaw.com*
*Chris.Joe@BJCIPlaw.com*
Mark.Perantie@BJCIPlaw.com
*Niky.Bukovcan@BJCIPlaw.com*

Date: December 18, 2014