## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADVANCED MEDIA NETWORKS, LLC, | C.A. No. 14-1495-GMS |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, | |
| Defendants. | |
| ADVANCED MEDIA NETWORKS, LLC, | C.A. No. 14-1518-GMS |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| T-MOBILE US, INC.; and T-MOBILE USA, INC., | |
| Defendants. | |
| ADVANCED MEDIA NETWORKS, LLC | C.A. No. 15-0142-GMS |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| SPRINT COMMUNICATIONS, INC., SPRINT CORPORATION, BOOST WORLDWIDE, INC., VIRGIN MOBILE USA, INC., VIRGIN MOBILE USA, L.P., CLEARWIRE CORPORATION, AND CLEARWIRE COMMUNICATIONS, L.L.C., | |
| Defendants. | |
| ADVANCED MEDIA NETWORKS, LLC | C.A. No. 15-131-GMS |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| UNITED STATES CELLULAR CORPORATION, | |
| Defendant. | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO STAY PENDING *INTER PARTES* REVIEW**

YOUNG CONAWAY STARGATT
    & TAYLOR, LLP

Anne Shea Gaza (#4093)
Samantha G. Wilson (#5816)
Rodney Square
100 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

OF COUNSEL:

Asim Bhansali
Adam Lauridsen
Justina K. Sessions
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendants T-Mobile US, Inc.
and T-Mobile USA, Inc.*

ROSS ARONSTAM & MORITZ LLP

Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
bschladweiler@ramllp.com

OF COUNSEL:

Darcy L. Jones
Marcus A. Barber
KASOWITZ BENSON TORRES &
FRIEDMAN LLP
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA 94065
(650) 453-5170

*Attorneys for Defendant Cellco Partnership
d/b/a Verizon Wireless*

RICHARDS, LAYTON & FINGER P.A.

Steven J. Fineman (#4025)
Katharine L. Mowery (#5629)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
Fineman@rlf.com
Mowery@rlf.com

OF COUNSEL:

Paul E. Veith
Stephanie P. Koh
Bryan C. Mulder
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-4718
pveith@sidley.com
skoh@sidley.com
bmulder@sidley.com

*Attorneys for Defendant United States
Cellular Corporation d/b/a U.S. Cellular*

MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

Karen Jacobs (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jying@mnat.com

OF COUNSEL:

George J. Barry III
MCGUIRE WOODS LLP
1230 Peachtree Street, N.E.
Suite 2100
Atlanta, GA  30309
(404) 443-5500

David E. Finkelson
MCGUIRE WOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000

Rachelle H. Thompson
MCGUIREWOODS LLP
434 Fayetteville Street, Suite 2600
Raleigh, NC  27601
(919) 755-6600

*Attorneys for Defendants Sprint
Communications, Inc., Sprint Corporation,
Boost Worldwide, Inc., Virgin Mobile USA,
Inc., Virgin Mobile USA, L.P., Clearwire
Corporation, and Clearwire Communications,
L.L.C.*

Dated:  January 6, 2016

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.     INTRODUCTION ...........................................................................................................1

II.    STATEMENT OF FACTS AND NATURE AND STAGE OF THE
PROCEEDINGS ..........................................................................................................3

     A.    The asserted patent and accused products. .............................................................3

     B.    AMN waited from at least 2009 to 2014 before filing these lawsuits. ....................3

     C.    AMN has brought many lawsuits on the '074 patent in seven different
district courts in the last six years. ..........................................................................5

     D.    Parties other than Defendants initiated a series of reexamination
proceedings, during which AMN made substantially narrowing claim-
construction arguments to distinguish over prior art. .............................................7

     E.    T-Mobile and Verizon filed petitions for *inter partes* review covering most
claims of the '074 patent, and using the *Phillips* claim-construction
standard applicable in this Court.............................................................................9

III.    SUMMARY OF ARGUMENT ...................................................................................10

IV.    ARGUMENT.................................................................................................................11

     A.    A stay is likely to greatly simplify the issues. ......................................................12

     B.    The litigation is at an early stage. ........................................................................15

     C.    A stay would neither unduly prejudice AMN nor present AMN with a
clear tactical disadvantage. ...................................................................................16

V.    CONCLUSION.............................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**C**ASES

*ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012)................................................................................................1

*AT&T Intellectual Prop. I, L.P. v. Cox Commc'ns, Inc.*,
    C.A. No. 14-1106-GMS (D. Del. Sept. 24, 2015) ........................................................13, 19

*Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*,
    C.A. No. 12-1107-GMS, 2014 WL 1369721 (D. Del. Apr. 7, 2014)............................. passim

*Davoll, Inc. v. Atrium Med. Corp.*,
    C.A. No. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013)....................................20

*Enhanced Sec. Research , LLC v. Cisco Sys.*,
    C.A. No. 09-571-JJF, 2010 WL 2573925 (D. Del. June 25, 2010) ........................................16

*Ever Win Int'l Corp. v. RadioShack Corp.*,
    902 F. Supp. 2d 503 (D. Del. 2012)................................................................................15, 16

*Fifth Market Inc. v. CME Grp., Inc.*,
    C.A. No. 08-520-GMS, 2013 WL 3063461 (D. Del. June 19, 2013)....................................19

*Gioello Enters. Ltd. v. Mattel, Inc.*,
    C.A. No. 99-375-GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001)......................................15

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
    C.A. No. 12-054-GMS, 2012 WL 5549338 (D. Del. Nov. 15, 2012) ...................................20

*In-Depth Test LLC v. Linear Technology Corp.*,
    C.A. No. 14-1091-GMS, D.I. 22 (Sept. 3, 2015 Order) .........................................2, 12, 15, 19

*Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*,
    922 F. Supp. 2d 486 (D. Del. 2013)................................................................................15, 18

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
    C.A. No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013).........................12, 19, 20

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................................................................10

**S**TATUTES

35 U.S.C. §§ 102, 103......................................................................................................................2

35 U.S.C. § 285..............................................................................................................................18

35 U.S.C. § 314(a) ...................................................................................................................12

35 U.S.C. § 315.................................................................................................................13, 18

35 U.S.C. § 318(a) .....................................................................................................................2

**OTHER AUTHORITIES**

37 C.F.R. § 42.108(c).............................................................................................................12

Anthony L. Miel, *Patent Strategy: The Manager's Guide to Profiting from Patent Portfolios* (2002).............................................................................................................18

http://www.uspto.gov/sites/default/files/documents/2015-10-31%20PTAB.pdf .........................12

## I.    INTRODUCTION

Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. (collectively "T-Mobile"); Cellco Partnership d/b/a Verizon Wireless ("Verizon"); Sprint Corporation, Sprint Communications, Inc., Boost Worldwide, Inc., Virgin Mobile USA, Inc., Virgin Mobile USA, L.P., Clearwire Corporation, and Clearwire Communications, L.L.C. (collectively, "Sprint"); and United States Cellular Corporation ("U.S. Cellular" and, together with T-Mobile, Verizon, and Sprint, the "Defendants"), respectfully move this Court to stay these actions pending *inter partes* review of U.S. Patent No. 5,960,074 ("the '074 patent"), the sole patent-in-suit.  On December 16, 2015, T-Mobile and Verizon filed petitions for *inter partes* review of 163 of the '074 patent's 171 claims. Given its history of delay, forum shopping, and inconsistent positions, Plaintiff Advanced Media Networks, LLC ("AMN") will suffer no prejudice from a stay pending final decision on IPR. AMN is not a competitor to Defendants,[1] and thus can seek only monetary relief in these cases.[2] A stay will not affect or diminish the availability of such relief.  Moreover, AMN's litigation strategy of bringing piecemeal lawsuits—in no less than seven different judicial districts over the past six years—belies AMN's contention that a stay now would cause it undue prejudice.

A stay here would serve the same purpose as in many cases involving IPR: it could significantly streamline, or eliminate altogether, the issues in this case.  The pending IPR petitions present new prior art and new obviousness combinations that the USPTO did not

---

[1] AMN conceded as much in its Motion to Lift Temporary Stay, arguing only that the prior stay impaired its ability to generate licensing revenue.  *See* D.I. 30 (AMN Mot. to Lift Temp. Stay) at 3. Unless otherwise noted, docket index citations are to the *Advanced Media Networks LLC v. T-Mobile US, Inc., et al.*, C.A. No. 14-1518-GMS (D. Del. 2014) ("*T-Mobile*") docket.

[2] *See, e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commcn's, Inc.*, 694 F.3d 1312, 1337-38 (Fed. Cir. 2012) (holding that patentee's harm from infringement by non-direct-competitor was "certainly not irreparable" and thus patentee was not entitled to injunctive relief).

consider during prosecution or *ex parte* reexamination of the '074 patent.  These new invalidity arguments, as well as the frequency with which the PTAB institutes IPR proceedings and cancels patent claims, suggest that the IPRs will likely result in the cancellation of some or all of the 86 claims that AMN asserts in this case.

This Court recently entered a stay prior to institution of an IPR in *In-Depth Test LLC v. Linear Technology Corp.*, reasoning that "if [Defendant's] motion for *inter partes* review[] is granted, it is very likely to simplify the issues in question and streamline the trial."[3]  Here, too, because the filed IPR petitions cover every independent claim and nearly every dependent claim of the '074 patent, they have the potential to eliminate or streamline all issues in this case.  Some or all of the claims at issue in this case may be cancelled.  Further, if IPR is instituted, statutory estoppel will bar T-Mobile and Verizon from asserting certain invalidity arguments in this Court, and Sprint and U.S. Cellular agree to be similarly bound.[4]  Further, a stay pending IPR is uniquely warranted here, given AMN's history of taking positions when asserting infringement in district court that are inconsistent with the position it takes in the USPTO when addressing validity.  (*See infra* at 7-9)  The Court and the parties may benefit from the narrowing of issues that an *adversarial* validity proceeding before the PTAB may provide.

---

[3] C.A. No. 14-1091-GMS ("*In-Depth Test*"), D.I. 22 (D. Del. Sept. 3, 2015 Order) at 2 n.1 (attached as Appendix A).

[4] In particular, if the Court grants this requested stay, non-petitioners Sprint and U.S. Cellular will agree not to assert in this litigation that any asserted claim is invalid under 35 U.S.C. §§ 102 or 103 on the basis of the combination(s) of prior art on which review was instituted by the PTAB with respect to such asserted claim based on T-Mobile and Verizon's petitions and which results in a final written decision affirming validity under 35 U.S.C. § 318(a) that is not reversed on appeal.

## II.    STATEMENT OF FACTS AND NATURE AND STAGE OF THE PROCEEDINGS

### A.    The asserted patent and accused products.

The '074 patent was filed on September 23, 1996 and issued on September 28, 1999.[5]
The patent generally relates to a "telecomputer network" comprising (i) a redundant digital microwave communication system; (ii) a mobile hub; and (iii) a wireless local area network.[6]  As best Defendants can determine, AMN alleges that the '074 patent is relevant to "mobile Wi-Fi hotspot" technology, and that Defendants infringe in some manner either through providing such "hotspot" features in devices that operate on their networks or in operating the networks themselves.[7]

### B.    AMN waited from at least 2009 to 2014 before filing these lawsuits.

Defendants began offering certain "mobile Wi-Fi hotspot" services at least as early as 2009—over five years before AMN filed these suits.[8]  And AMN allegedly wrote T-Mobile and Verizon letters in 2012 accusing their hotspot and tethering products of infringement.[9]  Yet AMN waited until October 2014 to bring its first lawsuit, which it later dismissed, apparently to shop for a better forum.  On October 22, 2014, AMN filed suit against T-Mobile in the Eastern

---

[5] D.I. 1, Ex. 1 ('074 patent).

[6] *Id.* at Abstract.  The microwave communication system is sometimes called a "WAN," and the local-area network is sometimes called a "LAN."

[7] *See, e.g.*, D.I. 1 (T-Mobile Compl.) at ¶¶ 32-38.  It is not clear from AMN's Identification of Accused Products and Asserted Claims whether AMN is accusing Defendants' sale of certain devices or the operation of a wireless network, or both.  *See, e.g.,* Declaration of Justina K. Sessions ("Sessions Decl.") Ex. 1 (AMN's Identification of Accused Prods. & Asserted Claims). Nor is it clear whether AMN is accusing Defendants of single-actor direct infringement or joint infringement.  *Id.*  AMN has not provided U.S. Cellular with an Identification of Accused Products and Asserted Claims regarding U.S. Cellular's products.

[8] *See* D.I. 21 (Defs. July 1, 2015 Mot. to Stay) at 5; *see also* D.I. 22-1 (Gaza Decl. Ex. 1).

[9] D.I. 1 (T-Mobile Compl.),¶ 41; *Advanced Media Networks, LLC v. Cellco P'ship d/b/a Verizon Wireless*, C.A. No. 14-1495-GMS (D. Del. 2014) ("*Verizon*"), D.I. 1 (Verizon Compl.) ¶ 39; *Advanced Media Networks, LLC v. Sprint Commc'ns, Inc.*, C.A. No. 15-00142-GMS ("*Sprint*"), D.I. 1 (Sprint Compl.) at ¶¶ 34-40, 57-63, 81-87, 99-105.

District of Texas alleging infringement of the '074 patent.[10]  Then, just days before T-Mobile's responsive pleading was due, AMN voluntarily dismissed that case, without explanation.[11]

But before dismissing its Texas case, on December 18, 2014—and more than 15 years after the '074 patent issued in September 1999—AMN sued Verizon in this Court.[12]  Then, six days later—*i.e.*, immediately after judicial assignment of the case against Verizon was made—AMN dismissed its Texas suit against T-Mobile and re-filed in this District.[13]  Then, two months later, AMN filed nearly identical suits against Sprint and U.S. Cellular in this District.[14]

Inexplicably, AMN did not sue AT&T, one of the largest wireless carriers in the country, at the same time or in the same place as any of Verizon, T-Mobile, Sprint or U.S. Cellular. Instead, AMN waited until late October 2015 and then sued AT&T in yet another forum—the Northern District of Texas.[15]  This suit was nearly one year after AMN's original suit against T-Mobile, ten months after its suit against Verizon, and eight months after its suits against Sprint and U.S. Cellular.

Verizon, T-Mobile, and Sprint filed their answers on February 9, 2015, February 9, 2015, and May 1, 2015, respectively.[16]  U.S. Cellular answered on July 20, 2015.[17]  Before the Court entered a case schedule, Verizon, T-Mobile, and Sprint moved to stay these cases during then-

---

[10] *Advanced Media Networks, LLC v. T-Mobile US, Inc.*, C.A. No. 14-cv-00990-JRG-RSP (E.D. Tex. 2014), D.I. 1 (T-Mobile Tex. Compl.).

[11] *Id.* at D.I. 16 (Not. of Voluntary Dismissal).

[12] *Verizon*, 14 -1495-GMS, D.I. 1 (Verizon Compl.).

[13] D.I. 1 (T-Mobile Compl.).

[14] *Advanced Media Networks, LLC v. U.S. Cellular Corp.*, C.A. No. 15-0131-GMS D.I. 1 (D. Del. 2015) ("*U.S. Cellular*"); *Sprint*, D.I. 1 (Sprint Compl.).

[15] *Advanced Media Networks LLC v. AT&T Inc.*, 15-cv-03496-N (N.D. Tex. 2015).

[16] *Verizon*, D.I. 9 (Verizon Answer); *T-Mobile*, D.I. 10 (T-Mobile Answer); *Sprint*, D.I. 16 (Sprint Answer).

[17] *U.S. Cellular*, D.I. 12.

pending *ex parte* reexamination proceedings.[18]   The Court temporarily stayed the cases while it

considered Defendants' motion.[19]   AMN and U.S. Cellular stipulated to stay their case so long as

the other cases remained stayed.[20]   The *ex parte* reexamination concluded on November 13,

2015, [21] and AMN moved to lift the temporary stay.[22]   Verizon, T-Mobile, and Sprint opposed,

arguing that it would be premature to lift the stay because some Defendants would file an IPR

petition imminently.[23]   The Court lifted the temporary stay and denied the prior motion to stay as

moot, as "the sole basis for the motion to stay (D.I. 20) was the ongoing reexamination of the

'074 patent."[24]   The stay of the U.S. Cellular case was also lifted as a result.[25]

**C.**     **AMN has brought many lawsuits on the '074 patent in seven different district courts in the last six years.**

In addition to its current lawsuits against certain cellular service providers in this District,

AMN has filed many other lawsuits on the '074 patent in courts all over the country:

- In 2010, AMN sued airplane WiFi providers in the United States District Court

     for the Southern District of New York (the "*Inmarsat*" case).[26]   The parties settled

     after briefing claim construction.[27]

- A year later, in 2011, AMN sued other airplane WiFi providers in the United

---

[18] D.I. 21 (Defs. July 1, 2015 Mot. to Stay).

[19] *See* July 2, 2015 Minute Entry.

[20] *U.S. Cellular*, D.I. 11.

[21] *See* D.I. 31-1 (*Ex Parte* Reexam Cert.).

[22] D.I. 30 (AMN Mot. to Lift Temp. Stay).

[23] D.I. 32 (Defs' Opp. to Mot. of Lift Stay).

[24] D.I. 34 at 2 n.3 (Order on Motion for Temp. Stay and Motion to Lift Temp. Stay).

[25] *U.S. Cellular*, D.I. 18.

[26] *Advanced Media Networks, L.L.C. v. Inmarsat Inc.*, C.A. No. 10-cv-00194 (S.D.N.Y. Jan. 11, 2010) ("*Inmarsat*"), D.I. 1 (Inmarsat Compl.).

[27] *Id.* at D.I. 112 (Stip. of Dismissal).

States District Court for the Central District of California (the "*Gogo*" case).[28]
The parties settled almost immediately after the court issued its claim-
construction order.  AMN specifically told the court that the settlement was
contingent on the court vacating that order.[29]

- On December 28, 2012, AMN sued another airplane WiFi provider and airline in
  the United States District Court for the Central District of California.[30]

- On January 21, 2015, AMN sued even more airplane WiFi and in-flight
  entertainment providers in the United States District Court for the Southern
  District of California.[31]

- On February 26, 2015, AMN sued at-sea WiFi providers and their customers in
  the United States District Court for the Middle District of Florida.[32]

- On March 3, 2015, AMN sued another mobile WiFi provider in the United States
  District Court for the District of Rhode Island.[33]

- In May 2015, AMN filed lawsuits against various car manufacturers (General
  Motors, Fiat-Chrysler, Mercedes-Benz, and Volkswagen) in this District.[34]

---

[28] *Advanced Media Networks, LLC v. Gogo LLC*, C.A. No. 11-cv-10474 (C.D. Cal. Dec. 19, 2011) ("*Gogo*"), D.I. 1 (Gogo Compl.).

[29] *Id.* at D.I. 161 ¶ 5 (Stip. to Dismiss Action).

[30] *Advanced Media Networks, LLC v. Row 44 Inc. and Southwest Airlines Co.*, C.A. No. 2:12-cv-11018 (C.D. Cal. Dec. 28, 2012), D.I. 1.

[31] *Advanced Media Networks, LLC v. Viasat, Inc.*, C.A. No. 15-cv-00143-BEN (S.D. Cal. Jan. 1, 2015), D.I. 1.

[32] *Advanced Media Networks, LLC v. Harris CapRock Commc'ns, Inc. et al.*, C.A. No. 8:15-cv-408 (M.D. Fla. Feb. 26, 2015), D.I. 1.

[33] *Advanced Media Networks LLC v. KVH Indus.*, C.A. No. 1:15-cv-84 (D.R.I. Mar. 3, 2015).

[34] *Advanced Media Networks LLC v. Gen.l Motors Co.*, C.A. No. 15-0403-GMS (D. Del. 2015); *Advanced Media Networks LLC v. FCA US LLC*, C.A. No. 15-0405-GMS (D. Del. 2015); *Advanced Media Networks LLC v. Mercedes-Benz USA LLC*, C.A. No. 15-0410-GMS (D. Del.

- On October 27, 2015, AMN sued AT&T in the United States District Court for the Northern District of Texas.[35]

**D.    Parties other than Defendants initiated a series of reexamination proceedings, during which AMN made substantially narrowing claim-construction arguments to distinguish over prior art.**

Defendants did not initiate any of the *ex parte* reexaminations to date.  During each of these prior reexaminations, AMN successfully distinguished the '074 patent over the prior art by arguing positions that directly contradict those AMN has taken in district court litigation.  By way of non-limiting example:

- AMN argued in reexamination that the claimed "mobile nomadic hub" had to be capable of "transmitting and/or receiving information while the unit is in transit," and convinced the Examiner that prior art that "require[d] line of sight connectivity in order to communicate . . . does not address how line-of-sight relationship can be maintaine[d] if a [portable base station] is in motion" and thus "fails to teach that the [portable base station] can transfer information as a nomadic transmission/reception point."[36]

  - *Directly contradicting* its statement that the invention could not use line-of-sight, AMN added during reexamination dependent claims reciting that very limitation, *e.g.*, claim 59 ("wherein the mobile hub station transfers information from a stationary position using an antenna that is calibrated through a line of sight process").

  - *And, in the Gogo claim-construction proceedings*, AMN urged that the

---

2015); *Advanced Media Networks LLC v. Volkswagen Group of Am., Inc.*, C.A. No. 15-0420-GMS (D. Del. 2015).

[35] *AT&T*, C.A. No. 15-3496-N (N.D. Tex. 2015), D.I. 1 (AT&T Compl.).

[36] Sessions Decl. Ex. 11 ('728/'789 Reexam Statement of Reasons for Patentability at 10-11); *see also* Sessions Decl., Ex. 2 ('383 Reexam, June 15, 2015 McNally Decl.) ¶ 40.

"transmission/reception point" did *not* need to be "moveable with respect to both networks" and pointed out that "[t]he specification describes embodiments where the mobile hub is operational when stationary and embodiments in which it is operational when non-stationary."[37]

- In the first reexamination and several thereafter, AMN also argued that the claimed redundant digital microwave communication system and local area network had to use the same protocol.[38]  Specifically, AMN convinced the Examiner that "[t]he '074 Patent specifies and claims the use of the same communication protocols (TCP/IP Ethernet) for the WAN and LAN."[39]

  o *But in the Inmarsat claim-construction proceedings*, AMN argued that the claims were not so limited, and explicitly argued that a single-protocol requirement was "inconsistent with the Patents as well as how communications technology is designed to be used in practice."[40]

- One of AMN's primary arguments to distinguish over the prior art was that the ATM protocol used in the prior art was not the same as the "ethernet packet switching" or TCP/IP protocols claimed in the '074 patent.  For example, AMN argued that "***ATM protocol, is not an 'ethernet packet switching protocol'***, and more specifically *not **TCI/IP*** [sic]."[41]

---

[37] D.I. 33 (11/30/15 Sessions Decl.), Ex. A (AMN's Opening Claim Constr. Br., *Gogo* case, D.I. 81) at 24.

[38] *Id.*, Ex. B ('992 Reexam, Statement of Reasons for Patentability) at 2; *see also id.* Ex. C (Aug. 15, 2011 McNally Decl.) ¶ 6.

[39] *Id.*, Ex. B ('992 Reexam, Statement of Reasons for Patentability) at 2

[40] *Id.*, Ex. D (AMN's Opening Claim Constr. Br., *Inmarsat* case, D.I. 105) at 17-18.

[41] Sessions Decl., Ex. 3 ('728/'789 Reexam, Dec. 5, 2013 Supp. Resp. to Office Action) at 31 (emphasis added).

- o *But in the Inmarsat claim-construction proceedings*, AMN took the exact opposite position and claimed that ATM *was* an ethernet packet switching protocol.[42] Specifically, AMN argued that "the Patents clearly contemplate selecting from a plurality of *Ethernet packet switching protocols*, *such as* the TCP/IP protocol, *ATM*, SMNP, MIME, etc."[43]

- *In the most recent reexamination*, AMN reiterated its prior arguments that (i) the mobile hub had to transmit and receive while in transit and could not use line-of-sight transmission, and (ii) the mobile hub must be "distinct" from the microwave communication system and the LAN and must sit "between the two communications networks."[44]

  - o *But in these cases*, AMN accuses Defendants' wireless hotspots of infringement. Petitioners' wireless hotspots create a LAN and thus do not sit <u>between</u> a wireless LAN and a WAN.

**E.    T-Mobile and Verizon filed petitions for *inter partes* review covering most claims of the '074 patent, and using the *Phillips* claim-construction standard applicable in this Court.**

On December 16, 2015, T-Mobile and Verizon filed two IPR petitions.  Together, these petitions cover 166 claims of the '074 patent.[45]  The petitions present art and arguments that the

---

[42] D.I. 33 (11/30/15 Sessions Decl.), Ex. D (AMN's Opening Claim Constr. Br., *Inmarsat* case, D.I. 105) at 17.

[43] *Id* (emphasis added).

[44] Sessions Decl., Ex. 4 ('383 Reexam, June 15, 2015 Resp. to Office Action) at 44-45.

[45] Sessions Decl., Ex. 5 (IPR2016-00347, Paper 1 (Petition for IPR)), Ex. 6 (IPR2016-00349, Paper 1 (Petition for IPR)).  The Petitions as accepted for filing by the PTAB include 85 of the 86 claims AMN identified in its Identification of Accused Products and Asserted Claims and 166 of the 171 total claims in the '074 patent. *See id.*; *see also Id.*, Ex. 1 (AMN Identification of Accused Prods. & Asserted Claims). T-Mobile and Verizon inadvertently omitted a single dependent claim (54) from those Petitions and have sought AMN's consent to file corrected Petitions including claim 54, which relies on the same grounds of invalidity (including the same

USPTO did not consider during prosecution.[46]

The '074 patent will likely expire before the PTAB renders a final decision on the IPR petitions.  Under these circumstances, the PTAB will use the *Phillips v. AWH Corp.*[47] claim-construction standard, rather than the "broadest reasonable construction" standard applicable to unexpired patents.[48]  The pending petitions present proposed claim constructions under the *Phillips* standard applicable in this Court.  In particular, the petitions present proposed claim constructions that are similar to those entered by the United States District Court for the Central District of California in the *AMN v. Gogo* case.

AMN's preliminary responses to the IPR petitions are due March 22, 2016.[49]  T-Mobile and Verizon expect that the PTAB will render a decision on whether to institute review no later than July 2016.

## III.    SUMMARY OF ARGUMENT

The Court should stay these cases for three reasons:

1.    A stay will simplify the issues for trial in these four cases.  An IPR proceeding is likely to result in the cancellation of at least some of the claims AMN asserts and, conversely, could estop Defendants from pursuing certain invalidity defenses.  AMN itself acknowledges that IPR

---

page of the same prior art reference) as other included claims.  *Id.* Ex. 7 (Dec. 30, 2015 Lam Email to Counsel re: Corrections to IPR Petitions).

[46] One petition is based primarily on prior art that does not appear to have been part of the file history at all and certainly was not substantively addressed in any Office Action—and thus does not appear to have been considered substantively by the USPTO.  The second petition is based primarily on one piece of prior art that was part of an information disclosure, but not substantively considered by the USPTO—and not considered in combination with the other, new references presented in that petition.  *See* Sessions Decl., Ex. 5 at 56 and Ex. 6 at 56.

[47] 415 F.3d 1303 (Fed. Cir. 2005).

[48] *See* D.I. 33 (11/30/15 Sessions Decl.), Ex. E (IPR2015-00969, Paper 8 (Institution Decision dated Sept. 23, 2105)) at 6-7.

[49] D.I. 35-1, 35-2 (Notices of Petition Filing Dates).

proceedings are more likely to result in the cancellation of patent claims than the prior reexaminations. And, unlike the '074 patent's prior *ex parte* reexaminations, the *inter partes* review will employ the same claim-construction standard applicable in this Court. Thus, the IPR may streamline and clarify claim-construction disputes even if it is not ultimately instituted.

2.      AMN's cases remain in their infancy. Defendants have responded to AMN's complaints but no discovery or other proceedings have occurred, and no Scheduling Order has been entered. A stay now will allow the Court and the parties to avoid investing substantial resources to litigate the scope, application and validity of the '074 patent while the PTAB considers its scope and validity.

3.      A stay will not prejudice AMN. AMN waited years before filing suit against Defendants, and then further added to its own delay by forum shopping. AMN's decision to wait another six months and sue AT&T in an entirely different forum belies alleged prejudice to AMN from a stay in this case. AMN is not a commercial competitor of any of the Defendants, and therefore can be fully compensated by monetary damages. Finally, AMN's prior suggestion that delays resulting from reexamination or IPR proceedings "must end at some point" is inappropriate given that no Defendant in these actions requested any of the prior reexaminations, and all of the prior reexaminations were instituted before AMN even filed the instant suits.

## IV.     ARGUMENT

District courts have inherent authority to stay patent litigation proceedings pending *inter partes* review of a patent-in-suit.[50] In exercising their broad discretion, courts within this District consider three factors to determine whether a stay is appropriate: (1) whether a stay will simplify

---

[50] *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, C.A. No. 12-1107-GMS, 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014).

the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice.[51]  All three factors strongly favor a stay here.

### A.   A stay is likely to greatly simplify the issues.

This Court recently granted a stay in favor of a pending IPR petition, finding that, if the petition were granted, "it is very likely to simplify the issues in question and streamline the trial."[52]  And this Court then continued the stay in favor of a second IPR after the first IPR was not instituted.[53]  Likewise, here, the IPRs are very likely to simplify the issues and streamline the trial in these cases for two reasons.

*First*, the IPRs are likely to result in the cancellation of all or some of the patent claims asserted in these actions.  The PTAB will institute an IPR if it determines "that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the [IPR] petition."[54]  The PTAB institutes roughly 59% of the petitions filed that do not settle prior to an institution decision.[55]  And, once an IPR is instituted, the PTAB cancels at least one claim 86% of the time.[56]  AMN's counsel acknowledged during a hearing before this Court that an IPR is far more likely to result in cancellation of patent claims than a reexamination, noting that "***unlike the IPR***, the ex parte reexamination procedure almost always

---

[51] *See id.*

[52] *In-Depth Test*, D.I. 22 (Sept. 3, 2015 Order) at 2 n.1.

[53] *Id.*

[54] 35 U.S.C. § 314(a); *see also* 37 C.F.R. § 42.108(c); *see also Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *4 n.5 (D. Del. July 2, 2013).

[55] http://www.uspto.gov/sites/default/files/documents/2015-10-31%20PTAB.pdf at 8-9 (last accessed Jan. 4, 2016).

[56] *Id.*  The PTAB cancels at least one claim in 86% of completed IPR trials (*i.e.*, trials that do not settle).

favored the plaintiffs or the patentholder."[57]  Thus, there is a reasonable likelihood—and a greater likelihood than presented in the prior reexamination proceedings—that the IPR petitions will result in the elimination of some, or possibly all, of the claims at issue in these cases.  Even if all claims are not cancelled, the IPR petitions will significantly streamline invalidity litigation in this Court.  For example, Defendants will be estopped from relying on prior-art combinations that the PTAB actually considers during any instituted IPR under 35 U.S.C. § 315(e)(2).  This has the potential to drastically reduce the scope of invalidity litigation.

*Second*, the IPRs will streamline the issues even if they are not instituted.  The PTAB will consider the petitions using the same claim-construction standard that applies in this Court.  Thus, assuming it files a Patent Owner's response to the petitions, AMN will have to set forth its claim-construction positions under the same legal standard as this Court would ultimately apply.[58]  This Court has recently granted a stay in favor of pending IPR petitions, noting that "[t]he results of the IPR may affect not only the validity of the asserted claims, but also their scope."[59]  The parties' arguments concerning claim construction may eliminate or narrow some claim-construction disputes—obviating the need to litigate them in this Court.

The IPR proceedings' potential to streamline or clarify claim-construction disputes weighs particularly in favor of a stay in this case because AMN has a history of taking vastly different claim-construction positions when defending the '074 patent's validity as compared to when it has asserted infringement.  For example, AMN previously argued to the USPTO that the '074 patent required that the local area network and communications subsystem/microwave

---

[57] D.I. 26 (July 2, 2015 Hrg. Tr.) at 9:7-9 (emphasis added).

[58] *See* Section II.E and n.48, above.

[59] *AT&T Intellectual Prop. I, L.P. v. Cox Commc'ns, Inc.*, C.A. No. 14-1106-GMS (D. Del. Sept. 24, 2015), D.I. 161 at 3 n.4, Attached as Appendix B ("*AT&T v. Cox*").

communication system use the same protocols.[60]  The Examiner credited this argument and

concluded that the prior art at issue did not use the same protocol throughout the network.[61]  But

AMN then argued *against* this same construction in the *Gogo* claim-construction proceedings.

When the *Gogo* court held AMN to its prior statements by rejecting some of AMN's broad

proposed claim constructions that conflicted with AMN's positions in the USPTO,[62] AMN

settled that case.  AMN's settlement was expressly predicated on the *Gogo* court vacating its

claim-construction order.[63]  Rather than allowing AMN to continue its gamesmanship by taking

inconsistent positions, the Court should stay the case to allow for the adversarial validity

proceeding in the PTAB to conclude.

AMN previously suggested that any IPRs are unlikely to succeed because the '074 patent

has already been through four reexaminations.  But AMN had not sued Defendants before any of

these reexaminations were instituted, Defendants had no part in those reexaminations, and the

IPR petitions raise new grounds of invalidity.  Specifically, the IPR petitions rely on prior art and

combinations that the USPTO has not previously considered.[64]  Moreover, AMN has, thus far,

been able to preserve the '074 patent's validity only by arguing for claim constructions far

narrower than those it has advocated in district court litigation.  AMN will not be able to hide

behind differing claim-construction standards in the forthcoming IPR proceedings.  The IPR

proceedings will force AMN to maintain consistent positions regarding its validity and

infringement allegations.

---

[60] *See supra* nn. 38-39.

[61] *Id.*

[62]  Sessions Decl., Ex. 8 (Order re Claim Constr., *Gogo* case, D.I. 140) at 13.

[63] *Id.* Ex. 9 (AMN Motion to Vacate Claim Constr. Order, *Gogo* case, D.I. 157) at 2.

[64] *See* Section II.E., above.

Accordingly, a stay pending resolution of the IPR petitions will likely simplify the issues before the Court and "maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."[65]  Just as in the *In-Depth Test* case, this Court can avoid needless duplicative litigation of claims that are likely to be cancelled by staying these cases pending T-Mobile and Verizon's IPR petitions.

**B.      The litigation is at an early stage.**

An early stay request weighs strongly in favor of a stay.[66]  The stage of litigation factor "weighs strongly in favor of a stay" when no conferences with the court have occurred, no schedules have been set, and no substantive motions have been filed.[67]

AMN's actions are in their infancy.  Defendants have answered AMN's complaints, but no other proceedings on the merits have taken place.  The Court has not issued a scheduling order nor set a trial date.[68]  AMN has not taken any discovery.  A stay now would avoid wasting the Court's and the parties' resources.  But proceeding with this case while the IPR petitions are pending risks significant duplication and inefficiency.

---

[65] *See Gioello Enters. Ltd. v. Mattel, Inc.*, C.A. No. 99-375-GMS, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) (quoting *Softview Computer Prods. v. Haworth, Inc.*, No. 97-cv-8815, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000)(internal alteration omitted)).

[66] *Ever Win Int'l Corp. v. RadioShack Corp.*, 902 F. Supp. 2d 503, 507-08 (D. Del. 2012) (stating that "[b]ecause Defendant's motion to stay was filed early in this case, this factor weighs strongly in favor of a stay," and specifically noting that "[n]o initial disclosures have been exchanged, no Scheduling Order has been entered, no discovery has occurred, claim construction has not been briefed, and neither a *Markman* hearing nor a trial date have been set").

[67] *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013).

[68] AMN sent Defendants a proposed case schedule on December 29, 2015.  Sessions Decl. Ex. 10 (Dec. 29, 2015 Bukovcan Email to Counsel re: All Del. Matters).

**C.      A stay would neither unduly prejudice AMN nor present AMN with a clear tactical disadvantage.**

To determine whether a plaintiff might be unduly prejudiced by a stay, this Court has previously looked to considerations such as the timing of the stay request, whether the plaintiff may be compensated through future money damages, the timing of the IPR request, and the status of the IPR proceedings.[69]   All of these considerations favor a stay.

While AMN has claimed that it will be injured by the delay resulting from the stay, it is well settled that mere delay in litigation "does not in itself establish undue prejudice."[70]   The lack of prejudice is confirmed here by the fact that (i) the parties are not direct competitors and, thus, any harm from alleged infringement can be compensated through money damages, and (ii) AMN never sought a preliminary injunction.[71]

AMN's own significant delay in enforcing its patent shows that it would not be prejudiced by a stay.  AMN began filing suits alleging infringement of the '074 patent several years ago, in the same time period that Defendants began releasing "mobile hotspot" products—but waited until years later to sue Defendants.[72]   And even after AMN commenced its suits against Defendants, it created further delay by its own forum shopping—for example, by filing, then voluntarily dismissing, a virtually identical lawsuit against T-Mobile in the Eastern District of Texas.[73]   This piecemeal litigation and forum-shopping has only continued.  After suing several major wireless carriers in these cases, AMN waited almost a year and then sued AT&T in

---

[69] *See Bonutti Skeletal*, 2014 WL 1369721, at *2.

[70] *Id.* at *2; *see also Enhanced Sec. Research , LLC v. Cisco Sys.*, C.A. No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010), (delay in resolution of litigation "alone does not warrant a finding that Plaintiffs will be unduly prejudiced").

[71] *See Ever Win*, 902 F. Supp. 2d at 511.

[72] *See* D.I. 22-1 (Gaza Decl. Ex. 1).

[73] *See* n. 10, above.

a different district court.  The only plausible explanation for this piecemeal litigation is forum shopping or the hope of taking inconsistent positions in different litigations.  AT&T—a large wireless carrier—is often sued alongside Defendants in this Court.[74]  Convenience does not explain AMN's decision to seek a different forum for suing AT&T since AMN has not sued any of the instant Defendants in their home districts.  AMN's actions belie any suggestion that these cases are suddenly urgent.

Yet AMN previously argued that "Defendants' continued infringement impairs AMN's ability to generate licensing revenue from its patents."[75]  To the extent that AMN contends that a stay would impair AMN's ability to license the patent to *others*, that proposition lacks support.  AMN's pending litigation against airplane WiFi providers did not prevent it from allegedly sending demand letters to T-Mobile and Verizon in 2012.  Nor has AMN's pending litigation against the instant Defendants prevented it from filing additional lawsuits against other wireless providers and car manufacturers—in this District and in others.  Thus, the fact that some litigation is pending has never impaired AMN's ability to send licensing demand letters or file other lawsuits.  To the extent that AMN contends that a stay in these cases impairs its ability to "generate licensing revenue" from the instant Defendants, that argument amounts to no more than an argument that any delay in and of itself is prejudicial.  As discussed above, this Court has previously rejected that proposition, and should do so here as well.  AMN's argument also is a concession that AMN does not compete with Defendants as it does not contend that it is losing any revenue to Defendants; instead, it wants to use licensing revenue to fund *other* operations.

---

[74] *See, e.g.*, C.A. Nos. 13-550-GMS; 13-551-GMS; 13-552-GMS; 13- 553-GMS; 13-554-GMS.

[75] D.I. 30 (AMN Mot. to Lift Temp. Stay) at 3.

Unlike AMN, which has delayed its own cases in favor of forum-shopping, Defendants will be severely prejudiced if a stay is not granted. Defendants will incur significant litigation expenses defending against a likely invalid patent. Unless these cases are later deemed to be exceptional under 35 U.S.C. § 285, those expenses are not recoverable. And beyond monetary concerns, the litigation also imposes substantial burdens on Defendants' employees and takes them away from their normal responsibilities. Thus, the harm to Defendants weighs heavily in favor of granting a stay.[76]

The timing of the stay request, and of the IPR petitions, also favors a stay. Defendants request this stay at an early stage of the litigation, and almost immediately after the PTAB accepted the IPR petitions for filing. T-Mobile and Verizon filed the IPR petitions within the one-year deadline mandated by 35 U.S.C. § 315(b).[77] In *Bonutti Skeletal*, this Court found that IPR petitions filed eight months to one year after the defendants were served with complaints, and before "the court had set a schedule and before discovery had commenced . . . were filed in a timely fashion" and that the timing favored a stay.[78]

The stay would not provide Defendants with a clear tactical advantage. This Court has previously found that "the absence of any events or rulings in the instant action that could be potentially harmful to the Defendants' positions suggests that the Defendants' stay request is not an inappropriate litigation tactic."[79] This case is in a similar posture. Moreover, Defendants

---

[76] *See Market-Alerts*, 922 F. Supp. 2d at 496 n. 15 (granting a stay in the context of a CBM proceeding because the stay would reduce the burden of litigation on the parties and the court (*citing Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207 (3d Cir.1976)); Anthony L. Miel, *Patent Strategy: The Manager's Guide to Profiting from Patent Portfolios*, 3 (2002) (noting that litigation imposes extraordinary burdens on defendants' employees and officers).

[77] *See Bonutti Skeletal*, 2014 WL 1369721, at * 2.

[78] *Id.* at *3.

[79] *Id.*

have not previously filed a single request for review of the '074 patent with the USPTO or the

PTAB.  AMN's prior citation to *Fifth Market Inc. v. CME Group, Inc.* is, therefore, inapposite.[80]

In that case the Court lifted a stay after the defendants (i) filed a reexamination request on one

patent-in-suit over a year after the Court issued its *Markman* order; and (ii) filed a reexamination

request on the second patent-in-suit and, after that reexamination concluded, stated that they

planned to file a new request for covered business method review of that same patent.  The Court

found that "a strategy of raising piecemeal PTO challenges to Fifth Market's patents in order to

prolong this litigation" weighed in favor of lifting the stay.[81]  Defendants have engaged in no

such gamesmanship here.  Indeed, if anyone has engaged in delay-inducing litigation tactics, it is

AMN.  The fact that AMN finds itself defending against serial reexamination or IPR requests is a

result of its own piecemeal litigation tactics and inconsistent positions.

Finally, the status of the IPR proceedings does not counsel against a stay.  As this Court

has previously stated, there is no reason to believe that the PTAB will not act "with all due haste,

in compliance with its statutory obligation."[82]  Thus, the PTAB will likely decide whether to

institute the IPR petitions by July 2016.  In *Bonutti Skeletal*, *Neste Oil OYJ*, *In-Depth Test*, and

*AT&T v. Cox*, this Court granted a stay in favor of pre-institution IPR proceedings.  The Court

should do the same here.

AMN's prior contention that this Court has "regularly decline[d] to grant stays where the

*inter partes* review petition had not yet been granted" ignore critical differences between those

---

[80] *See* D.I. 30 (AMN Mot. to Lift Temp. Stay) at 3 (*citing Fifth Market Inc. v. CME Grp., Inc.*, C.A. No. 08-520-GMS, 2013 WL 3063461 (D. Del. June 19, 2013)).

[81] *Fifth Market*, 2013 WL 3063461, at *1 n.1.

[82] *Bonutti Skeletal*, 2014 WL 1369721, at *4.

cases and the instant one.[83]  In the first case AMN cited in support, *Neste Oil*, this Court **granted** a stay in favor of a not-yet-instituted IPR petition.[84]  In the other two cases, this Court declined to enter stays because the parties were direct competitors.[85]  The harm from delay could be irreparable when the parties are direct competitors.  But that consideration is not present here, when AMN can be fully compensated—including for any delay—through money damages.

## V.     CONCLUSION

To avoid the unnecessary expenditure and waste of the Court's and the parties' resources, the moving Defendants respectfully request the Court enter a stay pending the PTAB's final decision on T-Mobile and Verizon's IPR petitions.

<table>
<tr><td>

YOUNG CONAWAY STARGATT<br>
    & TAYLOR, LLP

/s/ *Anne Shea Gaza*<br>
Anne Shea Gaza (#4093)<br>
Samantha G. Wilson (#5816)<br>
Rodney Square<br>
100 North King Street<br>
Wilmington, DE  19801<br>
(302) 571-6600<br>
agaza@ycst.com<br>
swilson@ycst.com

</td><td>

ROSS ARONSTAM & MORITZ LLP

/s/  *Benjamin J. Schladweiler*<br>
Benjamin J. Schladweiler (#4601)<br>
100 S. West Street, Suite 400<br>
Wilmington, DE  19801<br>
(302) 576-1600<br>
bschladweiler@ramllp.com

</td></tr>
<tr><td>

OF COUNSEL:

Asim Bhansali<br>
Adam Lauridsen<br>
Justina K. Sessions<br>
KEKER & VAN NEST LLP

</td><td>

OF COUNSEL:

Darcy L. Jones<br>
Marcus A. Barber<br>
KASOWITZ BENSON TORRES &<br>
FRIEDMAN LLP

</td></tr>
</table>

---

[83] *See* D.I. 30 (AMN Mot. to Lift Temp. Stay) at 5.

[84] *Neste Oil OYJ*, 2013 WL 3353984.

[85] *See Davoll, Inc. v. Atrium Med. Corp.*, C.A. No. 12-958-GMS, 2013 WL 3013343 (D. Del. June 17, 2013); *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-054-GMS, 2012 WL 5549338 (D. Del. Nov. 15, 2012).

633 Battery Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendants T-Mobile US, Inc.
and T-Mobile USA, Inc.*

333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA 94065
(650) 453-5170

*Attorneys for Defendant Cellco Partnership
d/b/a Verizon Wireless*

MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP

/s/ *Karen Jacobs*
Karen Jacobs (#2881)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
jying@mnat.com

OF COUNSEL:

George J. Barry III
MCGUIRE WOODS LLP
1230 Peachtree Street, N.E.
Suite 2100
Atlanta, GA  30309
(404) 443-5500

David E. Finkelson
MCGUIRE WOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
(804) 775-1000

Rachelle H. Thompson
MCGUIREWOODS LLP
434 Fayetteville Street, Suite 2600
Raleigh, NC  27601
(919) 755-6600

*Attorneys for Sprint Communications, Inc.,
Sprint Corporation, Boost Worldwide, Inc.,*

*Virgin Mobile USA, Inc., Virgin Mobile USA, L.P., Clearwire Corporation, and Clearwire Communications, L.L.C.*

*/s/ Steven J. Fineman*
Steven J. Fineman (#4025)
Katharine L. Mowery (#5629)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
Fineman@rlf.com
Mowery@rlf.com

Of Counsel:

Paul E. Veith
Stephanie P. Koh
Bryan C. Mulder
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-4718
pveith@sidley.com
skoh@sidley.com
bmulder@sidley.com

*Attorneys for Defendant United States Cellular Corporation d/b/a U.S. Cellular*

Dated:  January 6, 2016

## CERTIFICATE OF SERVICE

I, Anne Shea Gaza, Esquire, hereby certify that on January 6, 2016, I caused to be

electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF,

which will send notification that such filing is available for viewing and downloading to the

following counsel of record:

Stephen B. Brauerman, Esquire
Vanessa R. Tiradentes, Esquire
Sara E. Bussiere, Esquire
BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
*sbrauerman@bayardlaw.com*
*vtiradentes@bayardlaw.com*
*sbussiere@bayardlaw.com*

*Attorneys for Plaintiff*
*Advanced Media Networks, LLC*

I further certify that on January 6, 2016, I caused a copy of the foregoing

document to be served by e-mail on the above-listed counsel and the following:

Eric W. Buether, Esquire
Christopher M. Joe, Esquire
Brian A. Carpenter, Esquire
Mark D. Perantie, Esquire
Niknaz Bukovcan, Esquire
BUETHER JOE & CARPENTER, LLC
1700 Pacific Avenue, Suite 4750
Dallas, TX 75201
*Eric.Buether@BJCIPLaw.com*
*Chris.Joe@BJCIPLaw.com*
*Brian.Carpenter@BJCIPLaw.com*
*Mark.Perantie@BJCIPLaw.com*
*Niky.Bukovcan@BJCIPLaw.com*

*Attorneys for Plaintiff*
*Advanced Media Networks, LLC*

01:16479176.1

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

 */s/Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendants T-Mobile US, Inc.*
*and T-Mobile USA, Inc. on Behalf of All Defendants*

2